UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN W. BOYD, JR. and NATIONAL )
BLACK FARMERS ASSOCIATION, INC., )
)
Plaintiffs, )
)
v. )  Civil Case No. 12-01893 (RJL)
)
JAMES SCOTT FARRIN and ANDREW H. )
MARKS, )
)
Defendants. )

## MEMORANDUM OPINION
August 2, 2013 [## 10, 13]

Plaintiffs are a farm advocacy organization, the National Black Farmers Association ("NBFA"), and its president, John W. Boyd. Over more than two decades, Boyd and the NBFA have fought tirelessly to remedy years of discrimination against black farmers. Their work culminated in two pieces of legislation and two class-action lawsuits known as *Pigford I* and *Pigford II*. Together, these legislative and legal victories produced over $1 billion that was distributed among thousands of class members.

Defendants are two members of the team of lawyers that advocated on behalf of NBFA and class members in *Pigford II*. Plaintiffs allege that defendants promised to compensate them for their advocacy work during *Pigford II* but failed to follow through on their promise. Plaintiffs' complaint brings three claims: breach of fiduciary duty, quantum meruit, and breach of contract. Defendants have moved separately to dismiss

1

the complaint for lack of subject matter jurisdiction and for failure to state a claim.[1] Upon consideration of defendants' motions to dismiss and the entire record herein, the Court GRANTS defendants' motions to dismiss.

## BACKGROUND

Nearly sixteen years ago, black farmers brought a class action lawsuit challenging decades of racial discrimination in the allocation of federal farm assistance. *See Pigford v. Glickman*, No. 97-1978 (D.D.C. filed Aug. 28, 1997) ("*Pigford I*").[2] Following a 1999 settlement, the *Pigford I* Court approved claim packages for farmers who filed claims by September 12, 1999. Compl. [Dkt. # 1] ¶ 9. Alternatively, farmers who filed claims by September 15, 2000 could recover if they demonstrated "extraordinary circumstances" for their delayed filing. *Id.* ¶ 9. Plaintiff John Boyd, a Virginia farmer, recovered as a plaintiff under *Pigford I*, along with 20,000 other successful filers. *Id.* ¶ 9; *see also* Matrix of Objector Procedural Deficiencies, Ex. 28 to Pls.' Response to Objections to the Settlement, *In Re Black Farmers Discrimination Litigation*, No. 08-mc-511 (D.D.C. Aug. 25, 2011), at 6. However, about 65,000 farmers (the "late filers") were denied relief under *Pigford I* because they either 1) missed both deadlines or 2) filed before the

---

[1] *See* Def. James Scott Farrin's Mot. to Dismiss ("Farrin's Mot.") [Dkt. # 10], Feb. 4, 2013; Def. Andrew H. Marks' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Marks' Mot.") [Dkt. # 13], Feb. 4, 2013. Plaintiffs opposed these motions. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [Dkt. # 16], Mar. 1, 2013.
[2] This Court may take judicial notice of public records from related court proceedings, including *Pigford I* and *Pigford II*, without converting these motions to dismiss into motions for summary judgment. *See Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 236 (D.D.C. 2012).

September 15, 2000 deadline but could not demonstrate the requisite "extraordinary circumstances." Compl. ¶ 9.

Boyd is the president of the National Black Farmers Association. *Id.* ¶ 1. For decades, Boyd and NBFA have fought relentlessly on behalf of American black farmers. *Id.* ¶ 10. After the late filers were denied relief under *Pigford I*, Boyd and NBFA undertook an aggressive campaign to secure compensation for the late filers. *Id.* ¶¶ 10-59. Over the next eight years, Boyd testified before Congress, worked closely with Congressional leaders, drafted legislation, and organized large protests against the U.S. Department of Agriculture. *Id.* His work culminated in the passage of Section 14012 of the 2008 Farm Bill, which earmarked $100 million for the late filers. *Id.* ¶¶ 59-60; *see* Pub. Law No. 110-234, § 14012 ("2008 Farm Bill").

In order to avail themselves of the earmarked funds, the late filers needed to initiate a lawsuit under the 2008 Farm Bill. *Id.* ¶ 61. To represent NBFA and its members in the lawsuit, Boyd hired defendant Farrin, along with defendant Marks. *Id.* ¶ 62.[3] On June 2, 2008, the attorneys filed *National Black Farmers Association v. Schaffer*, No. 08-cv-940 (D.D.C. filed June 2, 2008), which was consolidated into *In Re Black Farmers Discrimination Litigation*, No. 08-mc-511 (D.D.C. filed Aug. 8, 2008) ("*Pigford II*"). Compl. ¶ 62; *see also* Order, *NBFA v. Schaffer*, No. 08-cv-940, Aug. 8, 2008. While the attorneys worked on the *Pigford II* lawsuit, Boyd and NBFA continued their political advocacy. Compl. ¶¶ 62-106. Specifically, Boyd and NBFA sought an

---

[3] Defendant Marks asserts that Boyd hired defendant Farrin to represent NBFA and its members, and that Farrin subsequently employed Marks' firm, Crowell & Moring LLP, to assist him on an hourly basis. Marks' Mot. at 6.

additional $1.15 billion for the late filers, on top of the $100 million already set aside for them. *Id.* ¶¶ 75, 82. Once again, Boyd and NBFA held rallies, met with senior government officials, reached out to other farm groups, and generated media attention for the cause. *Id.* ¶¶ 62-106.

On February 10, 2010, the *Pigford II* parties entered into a settlement to resolve the claims of the late filers. *Id.* ¶ 86. However, the settlement was contingent upon the appropriation of the additional $1.15 billion that Boyd and NBFA were attempting to secure. *Id.* Throughout 2010, Boyd and NBFA worked with lawmakers to push appropriation legislation through Congress and to the President's desk. *Id.* ¶¶ 87-106. After years of hard work, Boyd and NBFA witnessed the passage of the Claims Resolution Act on December 8, 2010, which appropriated the additional $1.15 billion for the late filers. *Id.* ¶ 106; *see also* Claims Resolution Act, H.R. 4783, Pub. Law No. 111-291, § 201 (2010).

Under the *Pigford II* settlement, the parties agreed to award attorneys' fees to class counsel of an amount between 4.1% and 7.4% of an adjusted sum of the settlement funds. *Id.* ¶ 108, 109. According to Boyd, Farrin made payments to Boyd for some of the work he performed and promised him that he would be fully compensated for his years of advocacy that helped generate the *Pigford II* settlement. *Id.* ¶¶ 72, 111-12, 115. But when class counsel filed their motion for attorneys' fees, Boyd was dismayed to learn that the attorneys did not mention him or seek any payment on his behalf. *Id.* ¶ 119. In response, Boyd filed a motion for leave to respond to the attorneys' fees motion. Mot. of John W. Boyd and the NBFA for 1) Leave to File Response to Class Counsel's Updated

4

and Original Mots. for Award of Attorneys' Fees and Expenses and 2) for Evidentiary Hearing, *Pigford II*, Oct. 5, 2012. He argued that defendants unjustly sought compensation for themselves for the advocacy work that Boyd had performed. *Id.* The Court denied Boyd's motion, finding that Boyd "ha[d] no legal interest in this case and thus no standing to participate in the Court's resolution of the attorneys' fee motion, or in any of the other determinations made by the Court in these proceedings." Opinion and Order, *Pigford II*, Jan. 29, 2013, at 4. The Court also recognized that Boyd "appear[ed] to have received a determination on the merits of his *Pigford [I]* claim . . . and he [was] therefore ineligible to participate as a plaintiff in [*Pigford II*]." *Id.* at 4 n.3. The Court also observed that NBFA, as an organization, could not be a member of the settlement class and, therefore, had no right to object to the motion for attorneys' fees. *Id.* at 5.

After having been denied compensation for their advocacy work from both the defendants and the *Pigford II* Court, Boyd and NBFA now seek such compensation in the instant case.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, defendants have moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). For a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "[Plaintiffs'] factual allegations in the complaint . . . will bear closer

5

scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs.*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citation and internal quotation marks omitted).

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has pleaded facts sufficient to "raise a right to relief above the speculative level," assuming that the facts alleged are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint should not be dismissed unless the court determines that the allegations do not support relief on any legal theory, the complaint nonetheless must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (alteration in original) (citation and internal quotation marks omitted). Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering motions under both Rule 12(b)(1) and Rule 12(b)(6), a court must construe the complaint in a light favorable to the plaintiff and must accept as true plaintiff's reasonable factual inferences. *See Howard v. Fenty*, 580 F. Supp. 2d 86, 89-90 (D.D.C. 2008); *Smith v. United States*, 475 F. Supp. 2d 1, 7 (D.D.C. 2006) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## ANALYSIS

Plaintiffs' complaint makes three claims. First, both plaintiffs allege that defendants breached their fiduciary duty as attorneys by failing to secure compensation for plaintiffs and by prioritizing their own interests over those of plaintiffs. Compl. ¶¶ 122-29. Second, plaintiff Boyd alleges that defendants breached an oral contract promising to pay Boyd for services rendered in support of the *Pigford II* litigation. *Id.* ¶ 136-38. Finally, plaintiff Boyd sues under a theory of quantum meruit for a portion of defendants' attorneys' fees that are attributable to his advocacy. *Id.* ¶ 130-35. Because plaintiffs lack standing to bring certain claims and fail to state any other claim for which relief can be granted, I must grant defendants' motions to dismiss.[4]

### I.     Lack of Standing under Rule 12(b)(1)

Several of plaintiffs' claims revolve around the assertion, express or implicit, that defendants injured them by failing to request compensation for them from the *Pigford II* Court. *See* Compl. ¶¶ 124(a, c, f), 125, 127. To the extent plaintiffs bring claims based upon this assertion, they lack standing to do so. To achieve "the irreducible

---

[4] The parties engage in a lengthy choice-of-law analysis in their briefs. *See* Farrin's Mot. at 10-16 (advocating for Virginia law or, in the alternative, North Carolina law); Pls.' Opp'n at 3-11 (advocating for District of Columbia law). This Court need not undertake this choice-of-law analysis because, under any of the selected state's laws, plaintiffs fail to state a claim. *See Lurie v. Mid-Atlantic Permanente Medical Group, P.C.*, 729 F. Supp. 2d 304, 325 (D.D.C. 2010) (because "the Court believes that identical results will be reached on all claims regardless of whether District of Columbia or Maryland law is applied . . . the Court finds it unnecessary to conduct a choice of law analysis . . . .") *see also GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992) (no "true conflict" exists for purposes of conflicts of law analysis when state's laws are functionally the same). For the purposes of this opinion, I will rely primarily upon District of Columbia law, the law of the forum and the law more favorable to plaintiffs, while also noting relevant similarities and differences in Virginia's and North Carolina's law.

7

constitutional minimum of standing," a plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). An action cannot constitute "an invasion of a legally protected interest" if "the action is of no legal significance." *Weaver's Cove Energy, LLC v. R.I. Dept. of Envtl. Mgmt.*, 524 F.3d 1330, 1333 (D.C. Cir. 2008).

Both plaintiffs have failed to show that they had a "legally protected interest" in compensation from the *Pigford II* Court. In fact, the *Pigford II* Court recently declared that both plaintiffs *cannot* collect from the *Pigford II* settlement as plaintiffs. On January 29, 2013, Judge Friedman held that Boyd could not participate as a *Pigford II* plaintiff because he had received a determination on the merits as a plaintiff in *Pigford I*. Opinion and Order, *Pigford II*, Jan. 29, 2013, at 4 n.3 & 5. In the same ruling, Judge Friedman also held that NBFA could not be a member of *Pigford II*'s settlement class because it is not an individual. *Id.* at 5.

Not only are Boyd and NBFA excluded from the settlement as plaintiffs, but they also are excluded from the settlement's attorneys' fees. It is well-established that, when attorneys' fees are available under fee-shifting statutes, nonlawyers cannot receive these "attorneys' fees." *See, e.g., Kooritzky v. Herman*, 178 F.3d 1315, 1320-21 (D.C. Cir. 1999) (denying attorneys' fees to a nonlawyer, *pro se* plaintiff). In fact, defendants could not have requested attorneys' fees for plaintiffs since such a request would have violated defendants' ethical obligation not to share fees with nonlawyers. *See* D.C. Rules Prof'l Conduct R. 5.4 ("A lawyer or law firm shall not share legal fees with a nonlawyer."); Va.

8

Rules Prof'l Conduct R. 5.4 (same); N.C. Rules Prof'l Conduct R. 5.4 (same). This ethical obligation serves many purposes, including "the need to ensure that the lawyer will control the litigation, the deterrence of solicitation by nonlawyer intermediaries, and the protection of clients from unreasonably high fees." D.C. Bar Ethics Opinion 351. Indeed, plaintiff Boyd appears to concede his non-entitlement to settlement funds in plaintiffs' opposition: "Plaintiffs do not dispute that Boyd could not be paid as an attorney from the common fund and do not allege that Boyd was damaged when defendants did not seek compensation for him *from the Court*." Pls.' Opp'n at 12 (emphasis in original).[5]

Since Boyd and NBFA could not collect from the settlement—either as plaintiffs or via attorneys' fees—they cannot establish a "legally protected interest" that defendants have "injured" by not seeking to collect these monies for them. *Cf. Oglala Sioux Tribe v. U.S. Army Corps of Engineers*, 537 F. Supp. 2d 161, 170 (D.D.C. 2008) (tribe did not have a "legally protected interest" in recreational facilities because those interests were abrogated by statute).[6] Absent such legally protected interest, plaintiffs do not have

---

[5] This concession is quite a change of tune from the complaint, in which Boyd repeatedly alleges that "[d]efendants did not seek any compensation" from the *Pigford II* Court on plaintiffs' behalf. *See* Compl. ¶¶ 124(c, f), 125, 127, 129.

[6] The *Pigford II* funds could be used only for certain enumerated purposes: payments to the settlement class, settlement costs/fees, and attorneys' fees. *See* Settlement, Ex. 2 to Unopposed Mot. for Preliminary Approval of Settlement, *Pigford II*, March 30, 2011, §§ IV.H.2, V.E.8-10. If any settlement funds remained after the requisite distributions were made, "cy pres beneficiaries" could receive remaining funds as "non-profit organization[s that] provided . . . advocacy services . . to African American farmers." *Id.* § V.E.13. While NBFA could potentially qualify for compensation as a cy pres beneficiary, NBFA seeks compensation in this case not as a cy pres beneficiary but rather as a plaintiff and/or via attorneys' fees—both of which are impermissible.

standing to bring claims alleging that they had a right to compensation from the settlement.

Excluding allegations related to compensation from the settlement, plaintiff NBFA has only one remaining claim: defendants breached their fiduciary duty when they "named NBFA as a plaintiff in the *Pigford II* litigation and used the stature and reputation of NBFA and Boyd to gain credibility with the Court and the *Pigford II* plaintiffs." Compl. ¶ 124(e); *see Foretich v. United States*, 351 F.3d 1198, 1211 (D.C. Cir. 2003) ("injury to reputation can constitute a cognizable injury sufficient for Article III standing") (citing *Meese v. Keene*, 481 U.S. 465, 473–77 (1987)).  While NBFA claims that these actions were "to the detriment of NBFA," NBFA simply fails to present facts showing that NBFA was injured by any of defendants' representations.  The only "injury" that NBFA identifies is the lack of compensation from the settlement, *id.* ¶ 127, which has already been deemed non-cognizable.  Because NBFA fails to allege any claim with a cognizable injury, NBFA lacks standing to bring its claims in this case.

In sum, plaintiff NBFA is dismissed for lack of standing, and plaintiff Boyd lacks standing to bring claims reliant upon compensation from the settlement.  What remains are Boyd's claims of breach of fiduciary duty, breach of contract, and quantum meruit, insofar as Boyd does not allege entitlement to settlement funds.

## II.   Failure to State a Claim under Rule 12(b)(6)

Unfortunately for Boyd, none of his remaining claims withstand defendants' motions to dismiss for failure to state a claim.  With respect to his breach of fiduciary duty claim, Boyd must allege (1) the existence of a fiduciary duty owed to Boyd by

10

defendants and (2) a breach of that duty. *See Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 54 (D.D.C. 2009).[7] While lawyers owe a fiduciary duty to their clients, *see In re Gonzalez*, 773 A.2d 1026, 1031 (D.C. 2001), the complaint does not show that defendants represented Boyd personally. The complaint suggests— and defendants assert—that defendants represented NBFA and its members, not Boyd. *See* Compl. ¶¶ 62, 110; Marks' Mot. at 6. *See also Griva v. Davison*, 637 A.2d 830, 838 (D.C. 1994) ("[A] lawyer for an entity, including a partnership, represents the entity, not its constituents."). While the complaint states in one paragraph that defendants "represented NBFA *and John Boyd* in connection with *Pigford II*," Compl. ¶ 122 (emphasis added), plaintiffs fail to identify any facts whatsoever to show that defendants represented Boyd. In fact, defendants could not have represented Boyd "in connection with *Pigford II*" since Boyd was precluded from being a *Pigford II* plaintiff.[8]

Boyd attempts to defend his fiduciary duty claim using two arguments. First, he claims that defendants owed him a fiduciary duty because he reasonably believed that defendants represented him. Pls.' Opp'n at 14. Second, even if no attorney-client duty existed, Boyd claims that defendants owed him a duty based upon their "special relationship of trust." *Id.* at 15 (citations omitted). Neither argument is persuasive. For his first claim, Boyd relies on three district court cases that address dissimilar contexts,

---

[7] Under Virginia law, plaintiff's breach of fiduciary duty claim would not be cognizable in this context. *See O'Connell v. Bean*, 263 Va. 176, 181 (Va. 2002) (citing *Oleyar v. Kerr*, 217 Va. 88, 90 (Va. 1976) (rejecting the tort of breach of fiduciary duty in the context of legal malpractice under Virginia law).

[8] In accordance with this logic, the *Pigford II* Court concluded that Boyd could not respond to a fee petition because he "[did] not qualify as a member of the class being represented by counsel." Opinion and Order, *Pigford II*, Jan. 29, 2013, at 4.

including an officer in his official capacity and a closely-held corporation's shareholders. *See* Pls.' Opp'n at 14. More importantly, Boyd simply has not shown that defendants were entrusted with any duty beyond advocacy for NBFA and the *Pigford II* plaintiffs. In short, there is no evidence that defendants were entrusted with a duty to further any independent interests of Boyd. Absent any facts alleging a duty related to Boyd, Boyd's fiduciary duty claim must be dismissed.

Nor can Boyd's breach of contract claim pass muster. To prevail on a breach of contract claim, a plaintiff must establish "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Estate of McDaniels v. Liberty Mut. Grp., Inc.*, 888 F. Supp. 2d 185, 189 (D.D.C. 2012) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). Central to the breach of contract claim against both defendants is the presence of a valid and enforceable agreement. *See Cambridge Holdings Grp., Inc. v. Federal Ins. Co.*, 357 F. Supp. 2d 89, 94 (D.D.C. 2004). "For an enforceable contract to exist, there must be both (1) agreement as to all material terms, and (2) intention of the parties to be bound." *Kramer Associates, Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005) (quoting *Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985)).

Boyd supports his breach of contract claim with naked allegations of verbal promises: defendants allegedly promised "to pay Boyd for his time and expenses," Compl. ¶ 71; "to pay Boyd for his time," *id.*; to "pay Boyd when [Farrin] was able," *id.* ¶ 72; to pay Boyd "for all the work he had done and was doing," *id.* ¶ 112; and to "pay him

what he was owed," *id.* ¶ 115.[9]  Nowhere does Boyd allege agreement as any detail beyond nebulous payment, much less "material terms" of an agreement. *Kramer*, 888 A.2d at 251. Further, nowhere does the complaint specify exactly what type of advocacy Boyd was expected to perform, how many hours he was expected to work, or how much defendants were expected to compensate him. Similarly, Boyd's allegation that "defendant Farrin made payments to Boyd for some of the work he was performing," Compl. ¶ 72, is devoid of any information as to what the payments were for, whether the payments were for one-time or ongoing activities, how much the payments were, or any other details. *See In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 71 (D.D.C. 2003) ("The terms of a contract must be definite enough that a court can identify the obligations that it should enforce."). Boyd's allegations are akin to "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which fail to survive a motion to dismiss. Conclusory allegations of verbal promises to pay, absent a description of the pertinent obligations, cannot "nudge…claim[s]…across the line from conceivable to plausible." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S., LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012).

Finally, Boyd's quantum meruit claim is similarly anemic. To recover on a quantum meruit claim, plaintiffs must prove four elements: "1) valuable services rendered by the plaintiff; 2) for the person from whom recovery is sought; 3) which services were accepted and enjoyed by that person; and 4) under circumstances which

---

[9] Notably, all of these alleged promises came from defendant Farrin. Boyd never alleges a single promise—written or oral—from defendant Marks regarding payment.

reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *United States ex. rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246 (D.C. Cir. 1996). As with Boyd's breach of contract claim, his quantum meruit claim fails to allege with specificity facts establishing that defendants knew Boyd expected to be paid. Boyd simply alleges that he "made clear that he expected and needed to be paid" that "[d]efendants agreed to pay Boyd for his time and expenses." Compl. ¶ 71. These statements are simply conclusions, devoid of factual details of the expectation that Boyd allegedly conveyed to defendants. Absent such details, Boyd's complaint cannot justify the conclusion that defendants were "reasonably notified . . . that the plaintiff, in performing such services, expected to be paid." *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 104-05 (D.D.C. 2006) (dismissing quantum meruit claim due to conclusory allegations and lack of detail). As such, Boyd's quantum meruit claim must also be dismissed.[10]

---

[10] In his opposition, Boyd alleges that his quantum meruit claim "encompasses a count for unjust enrichment." *See* Pls.' Opp'n at 21 (quoting *Modern Elec.*, 81 F.3d at 246, in noting that "The District of Columbia Court of Appeals uses the term *quantum meruit* to describe both [quantum meruit and unjust enrichment]."). Yet Boyd's supportive quotation is misleading, as he omits the beginning and end: *Although* the District of Columbia Court of Appeals uses the term "quantum meruit" to describe both [quantum meruit and unjust enrichment], *it distinguishes between these two causes of action, . . . and the parties do not quarrel with the district court's treatment of these as distinct theories of recovery.* *Id.* (emphasis added). Courts have "blurred" the distinction between quantum meruit and unjust enrichment over time, but nevertheless, "it is important to keep the two concepts clear and distinct." *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973). Respecting the distinction between these two causes of action, I will not interpret Boyd's complaint to include an implicit unjust enrichment claim. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations and internal quotation marks omitted).

## CONCLUSION

For all of the foregoing reasons, this Court GRANTS defendants' Motions to Dismiss plaintiffs' claims against them. A separate Order consistent with this ruling accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge